UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

          Plaintiff,

    v.                                             Case No. 16-CR-175

JASON MICHAEL LUDKE,

          Defendant.

_____

**SENTENCING MEMORANDUM**
_____

Jason Ludke should be sentenced to a 240-month term of imprisonment, to be followed by a life term of supervised release. His criminal history includes sexually assaulting a child and threatening to kill Chief Judge Griesbach, his staff, and his family. Ludke was convicted here of conspiring to join ISIS after going to great lengths in his effort to do so. And his relevant conduct includes trying from prison to have an FBI agent killed. Ludke is a 38 year old man. He has spent over 20 years proving that the only limits on his willingness to hurt people are his imagination and custodial status. To protect the public, the Court should impose the statutory maximum term of imprisonment.

    I.       Nature and Circumstances of the Offense

Ludke agreed and intended to join and fight for ISIS, because ISIS's goals were his goals. Ludke, over the years since he declared jihad and threatened to kill Chief Judge Griesbach for his "kuffar regime," has made himself very clear: he hates non-Muslims,

Muslims who do not support ISIS, the United States, and secular democracy. And he believes violence is the way to bring about what he wants. That is no surprise, as it is orthodox ISIS doctrine. *See, e.g.*, Graham Wood, THE ATLANTIC, *What ISIS Really Wants* (available at https://www.theatlantic.com/magazine/archive/2015/03/what-isis-really-wants/384980/) (explicating ISIS's views and explaining that "the lack of objective reporting from its territory makes the true extent of the slaughter unknowable, but social-media posts from the region suggest that individual executions happen more or less continually, and mass executions every few weeks"); *see also United States v. Lutchman*, 910 F.3d 33, 36-37 (2d Cir. 2018) ("Lutchman pledged his allegiance to ISIL and stated his intention to 'spill the blood' of nonbelievers."); *United States v. Van Haften*, 881 F.3d 543, 543 (7th Cir. 2018) ("Van Haften fits the typical profile of a terrorist: he believes that ISIS is fighting a holy war against America—a war that will culminate in the establishment of a global caliphate."); *United States v. Farah*, 899 F.3d 608, 612 (8th Cir. 2018) ("Daud and Farah longed for an opportunity to participate in an ISIL operation on American soil, and Omar looked forward to the demise of the United States: '[The infidels] are getting it. Allah will not let America be a superpower for this long . . . . [T]heir time is coming.'").

In 2015 and 2016, ISIS perpetrated hellish levels of violence. To this, Ludke was drawn and sought to contribute. And on September 29, 2016, Ludke "pledged [his] allegiance to the Amir Al-Mu'minin [Commander of the faithful] Al-Baghdadi as an Imam and Caliph based on the Qur'an and Sunnah in the path of the Khulafa' Al-Rashidun [the rightly guided Caliphates]." He recorded this pledge and believed that he had sent it to an ISIS recruiter in order to facilitate his enlistment. The allegiance, and

2

subsequent travel to join ISIS, of foreign nationals like Ludke is essential to ISIS advancing its goals. *See* Wood, *What ISIS Really Wants* ("Tens of thousands of foreign Muslims are thought to have immigrated to the Islamic State. Recruits hail from France, the United Kingdom, Belgium, Germany, Holland, Australia, Indonesia, the United States, and many other places. Many have come to fight, and many intend to die.").

The point does not need to be belabored: ISIS has killed countless people, and seeks, without exaggeration, the destruction of the United States of America. *See, e.g.*, *United States v. Suarez*, 893 F.3d 1330, 1332 (11th Cir. 2018) ("When the FBI arrested Harlem Suarez, he had already declared allegiance to the Islamic State of Iraq and al-Sham (ISIS), attempted to recruit others to join him in destroying the United States"), *cert. denied*, No. 18-6808, 2019 WL 113456 (U.S. Jan. 7, 2019); *Doe v. Mattis*, 889 F.3d 745, 749 (D.C. Cir. 2018) (ISIS "controls territory in Iraq and Syria, and has perpetrated and aided terrorism there and around the world, killing several thousand civilians, including American aid workers and journalists."); *United States v. Khusanov*, 731 F. App'x 19 (2d Cir. 2018) (noting that ISIS has a "history of particularly violent conduct" and "target[s] members of the United States armed forces serving abroad and encourage[s] terrorist acts within this country") (citation omitted). Jason Ludke conspired to join ISIS and help do those things.

There can be no doubt that he truly meant to join. He believed he was communicating with an ISIS recruiter. He said he would join. He then took the fairly drastic step of cutting off his GPS monitor and traveling from Wisconsin to Texas to join. He even recruited a co-conspirator, Padilla-Conde. This was a very real effort.

3

As the Court is aware, fortunately, law enforcement caught him before he could actually join ISIS and kill anyone. That upset Ludke enough to send letters from jail, via other inmates, calling for the murder of one of the FBI agents responsible for thwarting Ludke's plan. His response to being caught was not contrition or remorse, it was a new attempted murder. The nature and circumstances of the offense could hardly be worse.

Ludke's actions were inherently dangerous and implicate the Material Support statute's *raison d'etre*. Section 2339B "criminalizes a range of conduct that may not be harmful in itself but that may assist, even indirectly, organizations committed to pursuing acts of devastating harm." *United States v. Farhane*, 634 F.3d 127, 148 (2d Cir. 2011). As the Supreme Court has stated, "[t]he material-support statute is, on its face, a preventive measure - - it criminalizes not terrorist attacks themselves, but aid that makes the attacks more likely to occur." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 35 (2010).

In *Boim v. Holy Land Found, for Relief & Dev.*, 549 F.3d 685, 690 (7th Cir. 2008) (en banc), the Seventh Circuit held that giving money to Hamas, in violation of Section 2339B, necessarily involves an act "dangerous to human life." As *Boim* reasoned, providing financial support to Hamas, "by augmenting Hamas's resources, would enable Hamas to kill or wound, or try to kill, or conspire to kill more people[.]" *Id.* at 694. *Boim*'s reasoning is doubly persuasive in this case.

Volunteering oneself to a Foreign Terrorist Organization is, arguably, the most dangerous form of material support. As one court, citing *Boim*, recently held, "[c]ertainly attempting to provide oneself to a designated terrorist organization is at least, if not more, dangerous to human life than merely providing money." *United States v. Amri*, No. 1:17-

4

CR-50 (LMB), 2017 WL 3262254, at *15 (E.D. Va. July 31, 2017), *aff'd sub nom. United States v. Queen*, 738 F. App'x 794 (4th Cir. 2018); *see also United States v. Taleb-Jedi*, 566 F.Supp.2d 157, 167-69 (E.D.N.Y. 2008) ("the provision of personnel, like the provision of money, acts to free up others in a terrorist organization to engage in violence and other acts of terrorism"). This is so not just because the provision of oneself to a Foreign Terrorist Organization frees up the group's resources, but because those who "knowingly [seek] to join a terrorist group . . . risk . . . being turned against the United States." *United States v. Tounisi*, 900 F.3d 982, 986-88 (7th Cir. 2018) (stating that the defendant had "align[ed] himself with a group that advocates for the destruction of the United States and . . . placed himself at risk of becoming 'a pawn' in a future attack against the country"). Ludke's actions directly implicate these concerns and, therefore, merit the harshest sanction.

II. History and Characteristics of the Defendant

Jason Ludke had a difficult childhood. He was alternately in one parent's and then another's custody – both were abusive – and he spent time in foster care. But he did seem to have access to community services, received specialized, individualized education attentional and was placed with a foster family. He reported that family was strict but otherwise unremarkable. His two sisters are both nurses.

Nevertheless, the parade of horribles in Ludke's PSR defy summary. On a single page, for example, we learn that he is required to "register as a sex offender for the rest of his life" and that, ten years ago, Ludke declared jihad on Chief Judge Griesbach, promising him a "slow and painful" death. PSR at page 15. He has served multiple substantial prison terms, and upon being released, he has committed new, violent,

5

hateful crimes. He has also repeatedly committed new crimes while on supervision for previous crimes. The present case is no exception; Ludke had to cut off his GPS bracelet in order to travel to Texas in his effort to join ISIS. Finally, Ludke's long-standing commitment to extremism, as demonstrated by his 2009 jihad-invoking letters Judge Griesbach, suggests he is unlikely to reform and will likely continue to pose a threat to the public. *See Suarez*, 893 F.3d at 1337 (defendant convicted of attempting to provide material support to ISIS was "potential future threat to the public—given the likelihood of him maintaining his radical beliefs").

Ludke is in criminal history category VI not merely because of the sentencing enhancement at United States Sentencing Guidelines Section USSG § 3A1.4(a); he would have qualified as a VI in any event.[1] This is an astonishing fact given that he has hardly managed to spend any time out of custody since his teens without committing new, heinous crimes. But for the statutory maximum of 240 months, Ludke's United States Sentencing Guidelines range would be 360 months to life.

Thus, his history and characteristics, like his offense and relevant conduct, could hardly be worse.

---

[1] The parties agree, and the PSR recommends, that the sentencing enhancements set out at USSG §§ 3A1.4(a) and 3A1.4(b) are applicable. *See* Ludke Plea Agreement at ¶ 17; PSR at ¶¶ 29, 51.

III. Avoiding Unwarranted Disparity

The government highlights below recent cases in which defendants received statutory maximum sentences for convictions under Section 2339B involving the provision of personnel to Foreign Terrorist Organizations:

- Abdella Tounisi, 13 Cr. 328 (N.D. Ill.): Tounisi made plans to travel to Syria to join Jabhat al-Nusrah, a militant terrorist group associated with al-Qaida. Tounisi visited a purported recruitment website for Jabhat al-Nusrah and emailed the listed contact person, who was an FBI agent. Tounisi was arrested at O'Hare International Airport attempting to board a flight to Turkey. Tounisi pled guilty to one count of Attempting to Provide Material Support to ISIS and was sentenced to the statutory maximum of 15 years.[2] The Seventh Circuit recently affirmed his sentence. *See Tounisi*, 900 F.3d at 987-88.
- Abdurasul Hasanovich Juraboev and Akhror Saidakhmetov, 15 Cr. 95 (E.D.N.Y.): Juraboev and Saidakhmetov were roommates who sought to travel to ISIS-controlled territories. Juraboev and Saidakhmetov were eventually apprehended: Saidakhmetov after attempting to board a flight to Turkey, and Juraboev after purchasing a ticket for a flight to Turkey. Both defendants pled guilty to one count of Conspiracy to Provide Material Support to ISIS and were each sentenced to the statutory maximum of 15 years.
- Alla Saadeh, 15 Cr. 0558 (D.N.J.): Saadeh assisted his brother in attempting to join ISIS by paying for his ticket to Jordan. Saadeh also wished to join ISIS himself. Saadeh pled guilty to one count of Attempting to Provide Material Support to ISIS and was sentenced to the statutory maximum of 15 years.
- Adam Dandach, 14 Cr. 00109 (C.D. Cal.): Dandach made plans to travel to ISIS-controlled territory, purchased a ticket to fly from Orange County to Turkey, and was arrested at the John Wayne International Airport. Dandach pled guilty to one count of Attempting to Provide Material Support to ISIS and passport fraud and was sentenced to 15 years' incarceration, including the statutory maximum of 15 years on the Section 2339B charge.

---

[2] On June 2, 2015, the Senate passed the USA Freedom Act, increasing the penalty for violations of Section 2339B from 15 to 20 years.

7

Jason Ludke has the worst possible criminal history, offense of conviction, and relevant conduct. He is a true danger. The United States submits that the only sentence that can accomplish the goals of sentencing is a sentence of 240 months imprisonment to be followed by a life term of supervised release.

Respectfully submitted at Milwaukee, Wisconsin, this 19th day of February, 2019

MATTHEW D. KRUEGER
United States Attorney

By: *s/Benjamin Taibleson*
Benjamin Taibleson
Assistant United States Attorney
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
benjamin.taibleson@usdoj.gov

Joseph Attias
Trial Attorney
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: 202-616-0736
joseph.attias@usdoj.gov